*In re* A.C., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Anthony C., Respondent-Appellant).

Third District   No. 3—04—0722

Opinion filed January 5, 2005.

Jane E. Zimmer, of Moline, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (Lawrence M. Bauer, and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

The trial court found the respondent father, Anthony C., unfit to care for his minor child, A.C., because of (1) substantial neglect that was continuous and repeated (750 ILCS 50/1(D)(d) (West 2002)) and (2) depravity (750 ILCS 50/1(D)(i) (West 2002)). The court also terminated the respondent's parental rights regarding A.C. On appeal, the respondent argues that the trial court (1) violated his due process rights because of his telephonic participation in the fitness hearing; and (2) erred by terminating his parental rights. We affirm.

## BACKGROUND

A.C. was born on October 20, 2001. On March 5, 2004, the State petitioned the trial court to terminate the respondent's parental rights concerning A.C. In the petition, the State alleged that the respondent was unfit because of (1) substantial neglect that was continuous and repeated, (2) depravity, and (3) a previous finding of unfitness regarding another child. The depravity allegation was based on the respondent's convictions for five felonies and six misdemeanors. On April 15, 2004, the State amended the petition to include a sixth felony conviction.

The trial court began the fitness hearing on June 17, 2004. At that time, the respondent was in the custody of the Scott County, Iowa, sheriff's department. The Illinois court had arranged for the respondent to participate in the fitness hearing by speakerphone from the Iowa jail. The respondent's attorney, Dennis DePorter, was present in the courtroom. Before the hearing began, the judge cleared the courtroom and allowed the respondent and his attorney to confer privately by phone.

After the respondent's conference with his counsel, the respondent's attorney explained why the respondent was incarcerated in Iowa. The respondent was eligible for a pretrial release program in Iowa. However, there was a warrant for the respondent's arrest in Illinois "for nonpayment of a periodic installment." The Iowa sheriff's department would not release the respondent because he had an outstanding arrest warrant in Illinois.

The respondent's attorney then objected to the respondent's participation in the hearing by telephone. The attorney requested a continuance so that the respondent could attend the hearing in person.

The State objected to a continuance. During the State's objection, the following exchange took place among the assistant State's Attorney, the respondent, and the court:

"[ASSISTANT STATE'S ATTORNEY]: \*\*\* I believe that it's in [A.C.'s] interests that this hearing proceed today.

[RESPONDENT]: Hello.

THE COURT: Yes.

[RESPONDENT]: Okay. The speaker cut out.

THE COURT: The motion to continue, you know, it is a problem when you do these hearings by telephone and I recognize that. But the Illinois Appellate Court has given this as an option when we have somebody who is in custody and we can't secure their attendance in court, and that's the situation we have right now."

The trial court then denied the respondent's request for a continuance.

Before the parties presented evidence, the trial judge told the respondent, "if you have any problem hearing what's being said[,] interrupt so we know you can't hear it." The judge also assured the respondent that the court periodically would allow him to confer with his attorney privately by phone.

The assistant State's Attorney offered A.C.'s birth certificate as evidence. The respondent then said that he could not hear what was being said. The judge explained that the State had offered A.C.'s birth certificate. The respondent replied, "All right."

The assistant State's Attorney next tendered copies of a series of the respondent's convictions that began in 1993. During the discussion of State's exhibit five, the respondent said, "I can't hear." The judge explained, "No one is saying anything right now. I'm just looking at the document." Then, the respondent and the judge discussed the conviction in exhibit five.

The assistant State's Attorney submitted more copies of the respondent's convictions. The series of convictions ended with State's exhibit 14, for which he had been sentenced on March 15, 2004.

Next, the assistant State's Attorney called Kathie McAdams to testify. Before McAdams began her testimony, the judge told the respondent, "if you have any trouble hearing the witness[,] be sure you speak up so we know to make sure you hear the testimony."

McAdams explained that she had been the Catholic Charities' (CC) caseworker for A.C. since the child's birth in 2001. At that point in the proceedings, the respondent said, "I can't hear." The judge then said, "Okay. Speak up, Miss McAdams." The caseworker then resumed her testimony.

McAdams said that the respondent had visited with A.C. at the respondent's parents' home. She stated that the last visit had occurred on November 19, 2003. The assistant State's Attorney asked McAdams, "Why did visitation stop at that time?" McAdams replied, "That was the last contact we had with him before he went into jail."

The respondent then said, "I can't hear." Attorney DePorter said the following to the respondent:

"Sometimes there's not anything being said, so we honestly I don't know how to say that. There are pauses and so if you can't hear us just say so. But if we don't respond that might be because the attorney or the witness or someone is just thinking and not actually saying anything. Okay?"

The respondent replied, "Okay."

McAdams resumed her testimony by saying that the respondent had been "in and out" of jail several times since November 2003. She said that prior to Christmas 2003 the respondent asked to visit with A.C. on Christmas day, but later he cancelled that visit. CC had been notified that the respondent was released from custody in March 2004. However, the respondent did not contact CC to reestablish visitation with A.C. after his release.

During cross-examination, McAdams said that she had observed approximately six visits between the respondent and A.C. She stated that those visits began in September or October 2003, and ended after the visit on November 19. McAdams submitted that the respondent interacted appropriately with his daughter during the visits. She contended that sometimes A.C. got along well with her father, and at other times A.C. did not want to interact with him. McAdams said that the visits took place twice a week during this period.

The respondent's attorney asked McAdams if the respondent visited with A.C. after November 19. McAdams stated, "We had been told at one point that the mother had taken her to jail." Again, the respondent said, "I can't hear." McAdams reiterated, "We had been told at one time that the mother had taken [A.C.] to go see him when he was incarcerated."

The guardian *ad litem* cross-examined McAdams. The respondent did not mention that he could not hear any of this testimony. The assistant State's Attorney then said that the State would not present any more witnesses.

Next, the trial judge again cleared the courtroom so that the respondent could confer with his lawyer privately by phone. After this conference, attorney DePorter called the respondent as a witness. The respondent and his attorney discussed the respondent's criminal record. Then, they began to review the respondent's visitation with A.C. However, during the discussion concerning visitation, the telephone connection with Iowa was lost and reestablished four times.

After the connection was broken a fifth time, the trial judge spoke directly with the respondent on the phone's handset. The judge told the respondent that he was recalling two warrants for the respondent's

arrest so that the respondent could attend the remainder of the fitness hearing in person. The judge ordered a continuation of the proceedings and again allowed the respondent to confer with his attorney privately by phone.

The trial court held the continuation of the fitness hearing on July 6, 2004. The respondent, however, was not present. The State had served the respondent with notice of the continuation on June 21, 2004. There was a new warrant for the respondent's arrest for acts he allegedly committed on June 26, 2004, in Rock Island County.

Attorney DePorter stated that he did not know where the respondent was and asked for another continuance. The judge expressed doubt that the respondent would appear even if the continuance was granted. The court denied the request for another continuance. Attorney DePorter said that he did not have other evidence to present on the respondent's behalf.

The trial court found the respondent to be unfit because the respondent had exhibited substantial neglect of A.C. that was continuous and repeated. The judge stated that this finding was based on the respondent's repeated incarceration, which had led to the respondent's failure to provide support or an appropriate home for A.C. The court also found the respondent unfit on the basis of depravity.

The best interest hearing was conducted on August 17, 2004. The respondent was present at this hearing. The court considered the best interest report that was prepared by McAdams for CC. In the report, McAdams stated that A.C. had been placed in foster care on January 6, 2002. Initially, she was placed with licensed foster parents. On September 25, 2002, A.C. and her half-siblings were moved into the home of the half-siblings' paternal grandparents. These foster parents had expressed an interest in providing subsidized guardianship for A.C.

According to the report, the foster parents "have loved and cared for [A.C.] as if she was their own grandchild since the beginning." McAdams said that A.C. was attached to her foster parents "and has referred to them as 'mom and pop' since beginning to speak." The foster parents provided A.C. and her siblings with "structure, security and predictability." The foster parents had accepted A.C. into their extended family. A.C. had become emotionally attached to her half-siblings. In the report, CC recommended (1) terminating the respondent's parental rights to A.C., and (2) guardianship for A.C. with the foster parents.

McAdams testified at the best interest hearing. She stated that A.C. had adjusted to living with the foster parents and considered them "pretty much as her parents." McAdams submitted that A.C.

was "very accepted" as a member of the foster parents' family. McAdams said that CC recommended terminating the respondent's parental rights because of his history of violence.

On cross-examination, McAdams stated that the respondent had finished a parenting course. She said that he had completed an anger management course, but CC had not received verification of its completion because the respondent failed to pay a bill for the course. McAdams reiterated that the respondent had not visited with A.C. since November 2003.

The court then questioned McAdams. Most of the court's questions concerned A.C.'s relationship with her foster parents and half-siblings. McAdams' answers were consistent with her statements in the best interest report.

The assistant State's Attorney then called the respondent as a witness. The respondent stated that he currently was in jail for alleged home invasion and aggravated battery.

The respondent also testified on his own behalf. He recalled his visits with A.C. The respondent asserted that he had completed an anger management course, but could not pay the final bill of $80. He also had completed a parenting course. The respondent asked the court not to terminate his parental rights to A.C.

At the conclusion of the hearing, the judge stated that the respondent had failed to care for A.C. because of his repeated incarceration. A.C. had lived most of her life with the foster parents. She had bonded with her foster parents and her half-siblings. The trial court found that it was in A.C.'s best interest to terminate the respondent's parental rights. The respondent appeals.

## ANALYSIS

### I. Due Process

The respondent contends that the trial court violated his due process rights during the fitness hearing by (1) conducting the proceedings by phone; and (2) conducting the proceedings with a faulty phone system. The respondent argues, therefore, that the trial court erred in finding him unfit.

Under the United States and Illinois Constitutions, a person cannot be deprived of a liberty interest without due process of law. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. A parent's interest in maintaining a parental relationship with his child is a fundamental liberty interest. *Santosky v. Kramer*, 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982). We review allegations of due process violations *de novo*. *In re Bernice B.*, 352 Ill. App. 3d 167, 815 N.E.2d 778 (2004).

The respondent cites *In re C.M.*, 319 Ill. App. 3d 344, 744 N.E.2d

916 (2001), for the proposition that his due process rights were violated because of his telephonic participation in the fitness hearing. In *C.M.*, the trial court allowed the caseworker to testify telephonically. However, the record failed to indicate why the trial court allowed the caseworker to testify telephonically or why she was absent from the courtroom. The *C.M.* court held that, under such circumstances, the trial court violated the respondent's due process rights.

We find the present case to be factually distinguishable from *C.M.* Unlike the circumstances of *C.M.*, the record in this case clearly indicates why the trial court allowed the respondent to testify telephonically and the reason for his absence from the courtroom. Therefore, we find the holding of *C.M.* to be inapposite to the instant case.

In *In re C.J.*, 272 Ill. App. 3d 461, 650 N.E.2d 290 (1995), this court ruled that the trial court violated a respondent's due process rights by holding a hearing to terminate the respondent's rights without the respondent's presence because the respondent was incarcerated in another state. We remanded the matter for the trial court to choose one of three alternative methods for the respondent's participation. One of these alternatives was to permit the respondent to participate in the proceedings telephonically.

■ In this case, the respondent was incarcerated in another state. The trial court allowed the respondent to participate in the proceedings telephonically. The court allowed the respondent to confer periodically with his attorney by phone privately. Under *C.J.*, the trial court did not violate the respondent's due process rights by choosing this alternative method of participation.

We further emphasize that the faulty nature of the phone system in this case did not cause the trial court to violate the respondent's due process rights. The record shows that the trial court encouraged the respondent to say when he could not hear the proceedings. Every time the respondent stated that he could not hear, the trial judge, the witness, or the respondent's attorney appropriately responded to the respondent's statement and cured the difficulty.

When the phone system failed during the respondent's testimony, the trial court withdrew the respondent's arrest warrants and ordered a continuance to permit the respondent to testify in person. The court protected the respondent's due process rights by these orders. The fact that the respondent did not appear at the continuance was attributable to the respondent, not to the State or to the court.

We hold as a matter of law that the trial court did not violate the respondent's due process rights because of his telephonic participation in the fitness hearing. Therefore, the court did not err by finding the respondent unfit.

## II. Best Interest

■ The respondent submits that the trial court erred by finding that it was in A.C.'s best interest to terminate his parental rights.

Once the trial court has found the parent to be unfit, all considerations must yield to the best interest of the child. *In re G.L.*, 329 Ill. App. 3d 18, 768 N.E.2d 367 (2002). In determining a child's best interest, the trial court shall consider (1) the physical safety and welfare of the child; (2) the child's sense of attachment; (3) the child's need for permanence, including stability and continuity of relationships with parental figures; and (4) the preferences of the persons available to care for the child. 705 ILCS 405/1—3(4.05)(a), (4.05)(d), (4.05)(g), (4.05)(j) (West 2002). The termination of a parent's rights based on a child's best interest will not be reversed absent an abuse of the trial court's discretion. *In re V.O.*, 284 Ill. App. 3d 686, 673 N.E.2d 439 (1996).

In this case, the trial court considered several statutory factors in determining A.C.'s best interest. The evidence showed that the respondent did not provide for A.C.'s safety or welfare because he failed to provide support or an adequate home for the child. A.C. felt a sense of attachment to her foster parents and her half-siblings in the foster home. A.C. deserved the kind of permanence and stability given by the foster parents that the respondent had failed to give A.C. during any part of her life. The record showed that the foster parents wished to provide subsidized guardianship for A.C.

We rule that the trial court did not abuse its discretion by terminating the respondent's parental rights regarding A.C.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Rock Island County circuit court finding the respondent to be unfit and terminating his parental rights concerning A.C.

Affirmed.

BARRY and O'BRIEN, JJ., concur.